LOTTINGER, Judge.
This is an intersectional collision case brought by the plaintiff, Frank Baker, against the State of Louisiana, through its Department of Education. Joined as defendants are Ruth Parkman, an employee of the Louisiana Department of Education who was driving an automobile owned by the latter at the time of the accident, and the American Motorists Insurance Company, liability insurer of the Department of Education. The Globe Indemnity Company intervened in the suit seeking the amount of compensation payments paid plaintiff as a result of the accident.
The State of Louisiana first filed an exception of no cause or right of action which, by agreement of counsel, was referred to the merits. All the defendants then filed answers in the nature of a general denial with an alternative plea of contributory negligence and the case went to trial on the merits. The trial judge rendered judgment in favor of the defendants and the case is now before» us on an appeal taken by the plaintiff. The trial judge has' favored us with written reasons for judgment, the pertinent parts of which are as follows:
“The collision occurred at approximately 11:30 A.M. on October 23, 1951, at the intersection of North Street in the city of Baton Rouge. North Street is a right of way street 30 feet wide running east and west. North Ninth Street is 22 feet wide and two blocks in length, running north and south at right angles across North Street, extending one block north and one block south of North Street. It offsets at its crossing of North Street, the southern portion intersecting North Street 10 feet west of the intersection of the northern portion with North Street.
“The testimony shows that just prior to the collision Miss Parkman’s car was parked at the curb on the west side of North Ninth Street about two car lengths north of North Street. She entered her car and proceeded toward North Street, moving out approximately two feet from the west curb of North Ninth Street and coming to a stop at North Street with the front end of her car in line with the north curb line of North Street. She testified that at this time she looked to her right, that is, west on North Street, and saw no vehicle approaching from that direction; and that she then *134 looked to her left, that is, east on North Street, and saw a boy on a bicycle approaching from that direction. Realizing that she had ample time in which to cross North Street before the bicyclist reached the intersection, she proceeded across.
“There is no further testimony relative to the boy on the bicycle. We can do no more than conjecture that he stopped at the curb or entered a private driveway before reaching North Ninth Street, and did not witness the collision.
“From the evidence I am convinced the automobile had crossed the center line of North Street at the time of the collision. The testimony of the investigating officers, who fixed the point of collision from the physical evidence, is* that this point was a'bout six paces northwest of the southeast corner and five paces northeast of the southwest corner of the intersection. Considering the widths of the two streets, this places the point of collision approximately four feet south of the center line. The testimony shows the motorcycle struck the automobile at its right rear wheel, or about three feet from the rear end of the car.
“The witness Borskey, probably the only eye witness to the collision, placed the point of collision several feet south of the center line. Miss Parkman testified she thought her car lacked only about one foot of completely clearing North Street at the time of the collision, while plaintiff testified it had not completely crossed over the .center line when he collided with it.
“Borskey’s opinion as to the point of collision is confirmed by his testimony that as the motorcycle approached the intersection it appeared to be traveling near the south curb of North Street, and that when Baker was thrown from his motorcycle he landed on the pavement immediately in front of him (Borskey). This witness, Borskey, was standing at the curb on the southeast corner of the intersection.
“I have no reason to doubt Miss Parkman’s testimony that she looked west on North Street and saw no vehicle approaching, nor plaintiff’s testimony that he was traveling at a speed of approximately twenty-five miles per hour. In view of the undisputed fact that the motorcycle reached the intersection and collided with the automobile before it had completely cleared the crossing, it would be difficult to reconcile these statements except for other testimony.
“The testimony shows there is a downward slope toward the east on North Street commencing at a point west of Ninth Street. From personal observation this point appears to be approximately 250 feet west of Ninth Street, and based on this personal observation it is my conclusion that from the point where Miss Parkman stopped her car and looked west on North Street she could have seen passenger cars and larger vehicles approaching from a considerable distance west on North Street, although not all of any such vehicle would have been visible until it reached a point at or near the beginning of the downward slope. So little of a motorcycle would be visible until it reached a point very near the beginning of the downward slope that it would have been well nigh impossible for Miss Parkman to see and identify plaintiff’s motorcycle as an approaching vehicle until it reached a point some 250 feet from her, and from which point at his speed he would reach Ninth Street in approximately seven seconds.
“Was Miss Parkman negligent in undertaking the crossing under these circumstances? Was she obliged to defer her crossing until she was certain a motorcycle was not approaching from the west? I think not.
“The jurisprudence on intersectional collisions is built almost entirely on collisions of automobiles and larger vehicles. It should not, without any exception, be applied where a motorcycle is involved, since the ratio of automobiles and larger motor vehicles to motorcycles is probably more than one hundred to one.
“The same physical facts which made it impossible for Miss Parkman to identify plaintiff’s motorcycle as an approaching vehicle until it was close upon her likewise made it impossible for plaintiff to have a *135 clear view of tlie Ninth Street crossing until he was close upon it. In my opinion, it was his duty, under these circumstances, to maintain a sharp lookout and make certain that he had a clear crossing at Ninth Street.
“From the testimony it does not appear that plaintiff made any effort to reduce his speed. He testified that he applied his front wheel brake when he first saw the automobile about four or five feet in front of him, but the investigating officers found no evidence of skid marks. Plaintiff further testified that when he first saw the automobile it was headed almost directly toward him because of the offset in Ninth Street. The automobile necessarily veered slightly to the right in crossing North Street, but so little that it would hardly have been noticeable to plaintiff.
“The witness Bowling testified that plaintiff stated to him approximately one hour after the accident that he saw the automobile when it stopped at the north curb of North Street but did not know it was going across until it ‘jumped out’ in front of him.
“Officer Kean testified that plaintiff stated to him immediately after the collision that he did not see the automobile until his motorcycle struck it.
“I am convinced from the testimony that no other vehicle was near the intersection at the time of the collision. Robert Augustus testified that he was driving west on North Street and was only a few feet away when the collision occurred. Borskey did not see him, and to me it is inconceivable that he would have failed to see Augustus if the latter had been there. There is no testimony whatever tending to corroborate the testimony of Augustus.
“Considering all the evidence, it is my opinion plaintiff was not keeping a proper lookout as he approached the Ninth Street crossing, and that he did not see what he could have seen. I do not consider it necessary to cite authorities for the well established proposition that the driver of a vehicle is charged with the responsibility of seeing what he could and should have seen, and that his failure therein constitutes negligence. I am of the opinion that except for plaintiff’s negligence in this connection he could and would have avoided the collision, and that this negligence was the sole and proximate cause of the accident.”
While counsel for appellant have failed to point out any manifest error in the findings of fact by the trial judge his contention on this appeal is that the trial judge erred by placing a more strict duty of care on the driver on the favored street than on the driver entering from the inferior street. Be that as it may, we find that the record substantially corroborates the facts found by the lower court and we think that under these facts the plaintiff is guilty of contributory negligence.
According to this record, plaintiff was travelling east on North Street, a favored street, at the speed, according to his testimony, of approximately 25 miles per hour on a three wheel motorcycle. The defendant, Miss Parkman, testified that she was travelling south on Ninth Street, an unfavored street, at the speed of a little over 10 miles per hour. We are further convinced from the facts as found in this record, that the point of collision took place approximately four feet south of the center line on North Street, in the southwest corner of said intersection, and that the motorcycle struck the automobile of Miss Parkman at its right rear wheel or about three feet from the rear end of the car. Considering the relative speed of the two vehicles, the point of impact and the place where the Parkman vehicle was damaged, as well as the distance travelled by Miss Parkman in the intersection, we are of the opinion that the plaintiff was negligent in not seeing that which he should have seen in time to avoid the accident.
The plaintiff himself testified that he did not see the Parkman car until the very moment of the collision. His excuse for not doing so was that there was a line of traffic going west. His own witnesses, however, Robert Augustus and Charles Borskey, testified that such was not the fact. It appears to us that there was absolutely nothing to *136 distract the plaintiff’s view of the approaching car and that had he even been keeping a casual look-out he would have seen the Parkman car as it emerged in ample time to have avoided the collision by either stopping, slowing down or going to his left. Under these circumstances we cannot help but conclude that he was guilty of negligence such as to preclude his recovery.
Having concluded that the record reflects no manifest error in the findings of the lower court it is not necessary to pass upon the exception of no right or cause of action nor is it necessary to discuss the question of negligence, if any, of Miss Parkman. For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.
HOFFPAUIR, Judge ad hoc, dissenting from the refusal to grant a rehearing.